IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CT-3072-FL

| | | |
|---|---|---|
| GILBERTO CRUz HERNANDEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JOHN HERRING, | ) | |
| | ) | |
| Defendant.[1] | ) | |

This matter is before the court on defendant's motion for summary judgment (DE 26). Plaintiff responded in opposition and in this posture the issues raised are ripe for ruling.

### STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint on February 19, 2020, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendant violated his rights under various constitutional provisions by suspending indefinitely his visitation privileges with his family without justification, and by failing to provide plaintiff a meaningful procedural opportunity to challenge the suspension. Defendant John Herring, sued in his individual and official capacity, is the superintendent of the Maury Correctional Institution ("Maury C.I."), where plaintiff was housed during the relevant time period. Plaintiff seeks compensatory and punitive damages, injunctive relief directing defendant

---

[1] The court constructively amends the case caption to reflect dismissal of formerly named defendant Erik A. Hooks on October 9, 2020.

to restore his visitation rights, and declaratory relief.

Following a period of discovery, and in accordance with the court's case management order, defendant moved for summary judgment on December 17, 2021. Defendant argues that the undisputed record evidence establishes that the suspension of visitation privileges did not violate plaintiff's constitutional rights. In support of the motion, defendant relies upon memorandum of law, statement of material facts, and appendix of exhibits comprising the following: 1) defendant's personal declaration; 2) plaintiff's offender public information report; 3) plaintiff's infraction summary; 4) declaration of John Locke Milholland, IV, defendant's counsel; 5) North Carolina Department of Public Safety's visitation policy; and 6) Maury C.I.'s visitation policy.

Plaintiff responded in opposition to the motion, relying upon opposing statement of material facts, memorandum of law, and the following exhibits: 1) plaintiff's personal affidavit; 2) plaintiff's administrative grievance records; 3) Maury C.I. visitation policy; 4) plaintiff's inmate request records; 5) defendant's declaration; and 6) defendant's responses and objections to plaintiff's discovery requests.

**STATEMENT OF FACTS**

The facts viewed in the light most favorable to plaintiff may be summarized as follows. On June 27, 2019, defendant removed two of plaintiff's family members from plaintiff's approved visitor's list at the Maury C.I. (Pl's Aff. (DE 36-1) ¶ 5). Defendant suspended the visitors because he suspected plaintiff of using an unauthorized cellphone to communicate with them. (Id. ¶ 11; see also Herring Decl. (29-1) ¶ 4). Defendant, however, did not have concrete evidence establishing plaintiff used a cellphone. (Pl.'s Aff. (DE 36-1) ¶¶ 11–12). For example, Maury

2

C.I. officials searched plaintiff's cell repeatedly and did not recover a cellphone. (Id. ¶ 12). Plaintiff also was not charged with a disciplinary infraction for using a cellphone. (Id. ¶ 14).

According to plaintiff, neither of his family remembers received notice of the suspension as required by the Maury C.I.'s visitation policy. (Id. ¶ 7; Pl.'s Ex. 2 (DE 36-3) at 4).[2] Finally, although plaintiff claims the suspension was indefinite, Maury C.I.'s administrative records indicate that plaintiff's family members were moved back to the approved list on or before April 16, 2020. (Pl's Ex. 2 (DE 36-2) at 2).

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S.

---

[2]   Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

3

242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B. Analysis

    1. Fourteenth Amendment Claims

Plaintiff primarily argues that defendant violated his rights under the Due Process Clause

4

of the Fourteenth Amendment by denying in-person visitation with his family. In order to establish a procedural due process violation, plaintiff must identify a protected liberty interest and denial of the "minimally adequate process to protect that liberty interest." Smith v. Collins, 964 F.3d 266, 274 (4th Cir. 2020) (quotations omitted). The Supreme Court has held, however, that "[t]he denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' and therefore is not independently protected by the Due Process Clause." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 461 (1989) (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)); see also Desper v. Clarke, 1 F.4th 236, 246 (4th Cir. 2021) (suggesting that Thompson precludes Fourteenth Amendment procedural due process claim premised on denial of in-person visitation)). The Constitution therefore does not itself establish a protected liberty interest in in-person prison visitation.

Nor can plaintiff establish a protected liberty interest by reference to the visitation polices of the North Carolina Department of Public Safety or the Maury C.I. A state policy may give rise to a protected liberty interest if it "creates an objective expectation in the liberty interest in such a way that an inmate could reasonably expect to enforce it against prison officials." Desper, 1 F.4th at 247 (quotations omitted). "That objective expectation can be created by substantive predicates that guide or limit official discretion and that use explicitly mandatory language such that a particular outcome must follow if those predicates are satisfied." Id.

Plaintiff has not established the policies at issue create a liberty interest under the foregoing standard. The policies do not contain "substantive predicates" requiring officials to grant visitation under specified conditions. (DPS Visitation Policy (DE 29-7); Maury C.I. Visitation Policy (DE 29-8) § .2604). Instead, both policies indicate that visitation is a discretionary

5

"privilege." (DPS Visitation Policy (DE 29-7) § .0201; Maury C.I. Visitation Policy (DE 29-8) § .2604(a)(4), (d)(2)). The policies therefore do not create a protected liberty interest. Desper, 1 F.4th at 247 (relying on similar factors to hold prison visitation policy did not give rise to protected liberty interest)).

But even assuming that in-person visitation is a protected liberty interest, plaintiff has not established that he was denied minimally adequate process. "Particularly in the prison context, 'the requirements of due process are flexible and call for such procedural protections as the particular situation demands.'" Incumaa v. Stirling, 791 F.3d 517, 532 (4th Cir. 2015) (quoting Wilkinson v. Austin, 545 U.S. 209, 224 (2005)). "To determine whether the procedural protections are sufficient to protect an inmate's liberty interests, [the court must] look to Mathews v. Eldridge's three factor test:

> First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. (quoting Matthews v. Eldridge, 424 U.S. 319, 335 (1976).

Plaintiff's exhibits establish that he was provided notice of the decision removing his family members from the visitation list, and that he was allowed to challenge same through the Department of Public Safety's administrative grievance procedure. (See DE 36-2). And plaintiff fails to provide evidence or argument suggesting these procedures were inadequate under Matthews. In addition, the record establishes that any suspension was temporary, and that plaintiff retained the ability to communicate with his family through letters and legal telephone calls. (See Pl's Aff. (DE 36-1) (averring that only in-person visitation was limited); Pl.'s Ex. 2

6

(DE 36-2) at 2 (establishing plaintiff's family members were returned to the approved visitor's list); Herring Decl. (DE 29-1) ¶ 7 (same)). Accordingly, substantial pre-deprivation procedures were not required in light of the minimal burden on plaintiff's alleged protected liberty interest in visitation. See Desper, 1 F.4th at 246–47 (explaining these same factors limit the procedural protections necessary in the context of in-person prison visitation).

Plaintiff suggests that he should have been afforded pre-deprivation notice and opportunity to be heard prior to denial of in-person visitation. Pre-deprivation process, however, is not required in the context presented here, where officials suspected plaintiff of committing serious rule violations by communicating with his visitors using a contraband cellphone. See Zinermon v. Burch, 494 U.S. 113, 127–29 (1990) (pre-deprivation process is not required in all circumstances); Williams v. Benjamin, 77 F.3d 756, 770 (4th Cir. 1996) Although plaintiff argues that no cellphone was found in his cell and he was not charged with a disciplinary infraction for using a cellphone, he does not dispute that defendant received information indicating plaintiff was using a contraband phone to call his family. (See Herring Decl. (DE 29-1) ¶ 4).[3] The allegation presented a serious risk to prison safety and suggested that plaintiff's visitors were a threat to prison security, which justified dispensing with pre-deprivation process in this instance. See Williams, 77 F.3d at 770.

To the extent plaintiff is attempting to bring a substantive due process claim, such a claim requires evidence showing the denial of visitation "was, under the circumstances, so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Hawkins v. Freeman, 195 F.3d 732, 741 (4th Cir. 1999) (quoting County of Sacramento v. Lewis, 523 U.S.

---

[3] Notably, plaintiff provides no verified evidence suggesting that defendant's suspicion was contrived or otherwise without factual support. (See Pl's Aff. (DE 36-1)).

833, 847 n.8 (1998)). Plaintiff has not provided any evidence supporting a substantive due process claim under this standard, particularly in light of the undisputed fact that defendant received information indicating plaintiff was using a contraband cellphone. See Desper, 1 F.4th at 249.

Plaintiff also argues that defendant violated the visitation policies by failing to inform his family members of their suspension. The alleged violation of DPS or Maury C.I. policies, however, does not standing alone establish a violation of plaintiff's constitutional rights. See Riccio v. Cty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) ("Alleged violations of due process in the deprivation of a protectable interest are to be measured against a federal standard of what process is due and that standard is not defined by state-created procedures, even when those state-created procedures exceed the amount of process otherwise guaranteed by the Constitution.").

Finally, to the extent plaintiff is attempting to bring a claim premised on the Fourteenth Amendment's Equal Protection Clause, such a claim also is without merit. The Fourteenth Amendment's Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To that end, the Equal Protection Clause provides that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Generally, in order to establish an equal protection claim, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. If a plaintiff makes this showing, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level

of scrutiny." Veney v. Wyche, 293 F.3d 726, 730–31 (4th Cir. 2002) (internal quotation omitted); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Here, plaintiff fails to offer any evidence suggesting he was treated differently from other inmates accused of communicating with their families on contraband cellphones.

    2.    First Amendment Claim

The First Amendment protects freedom of familial association. See Overton v. Bazzetta, 539 U.S. 126, 131 (2003). But the "freedom of association is among the rights least compatible with incarceration." Id.; Jones v. N.C. Prisoner's Labor Union, Inc. 433 U.S. 199, 126 (1977). Thus, "[a]lthough the Supreme Court has considered issues concerning the visitation rights of prisoners in several cases, no case from that Court or [the United States Court of Appeals for the Fourth Circuit] clearly establishes a constitutional right to visitation grounded in the First . . . or Fourteenth Amendments." Desper, 1 F.4th at 243–44 (quotations omitted); see also Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975 (stating that an inmate "has no constitutional right to physical contact with his family"). Accordingly, no case law from the Supreme Court or the Fourth Circuit has established a constitutional right to in-person visitation.

Nevertheless, even assuming that plaintiff's First Amendment rights were implicated by the denial of in-person visitation, plaintiff has failed to establish a constitutional violation. Where a prison policy impinges on protected First Amendment activity, the regulation may be upheld if it is "reasonably related to legitimate penological interests." Overton, 539 U.S. at 132; Turner v. Safley, 482 U.S. 78, 89 (1987). In assessing reasonableness, the court considers the following four factors:

> (1) whether a "valid, rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to justify it," (2) whether

"alternative means of exercising the right [exist] that remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether there was an "absence of ready alternatives" to the regulation in question.

Heyer v. United States Bureau of Prisons, 984 F.3d 347, 356 (4th Cir. 2021) (quoting Turner, 482 U.S. at 89–90)).

Here, the decision to revoke plaintiff's in-person visitation is rationally connected to defendant's concerns that plaintiff was violating prison rules by communicating with his family members using a contraband cellphone. Defendant reasonably was concerned that if plaintiff committed serious rule violations with these family members, then in-person visitation also presented risks to security and good order of the institution. Heyer, 984 F.3d at 357 (explaining "[a] logical connection, even in the most general sense, will suffice"); (see also Herring Decl. (DE 29-1) ¶¶ 4, 11).[4] Plaintiff also retained alternative means of communicating with his family through writing letters or permitted telephone calls. And allowing plaintiff to retain visiting privileges in these circumstance would have a detrimental effect on prison security and allocation of resources based on the serious threat to security presented by suspected possession of the cellphone, and the fact that defendant believed plaintiff was communicating with the same family members who attended visitation. (Herring Decl. (DE 29-1) ¶¶ 4). Plaintiff therefore has not carried his burden of establishing the decision was unreasonable under Turner. Heyer, 984 F.3d at 356. According, defendant is entitled to judgment as a matter of law on plaintiff's First Amendment claim.

---

[4] Possession of a contraband cellphone in prison presents serious safety concerns. See United States v. Melton, 761 F. App'x 171, 172–74 (4th Cir. 2019).

3.  Eighth Amendment Claim

Plaintiff also alleges that defendant violated his rights under the Eighth Amendment by denying visitation. To succeed on an Eighth Amendment conditions of confinement claim, plaintiff must "show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). As to the first objective prong, "a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such harm resulting from the prisoner's exposure to the challenged conditions." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (quoting Strickler, 989 F.2d at 1381). Plaintiff offers no evidence establishing that the denial of visitation resulted in significant physical or emotional injury, substantial risk of same, or that defendant was deliberately indifferent.

4.  Retaliation

Plaintiff also alleges defendant retaliated against him by denying visitation. Retaliation claims require evidence of the following: 1) the plaintiff engaged in constitutionally protected First Amendment activity; 2) the defendant took an action that adversely affected that activity; and 3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017); see also Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005). Plaintiff also has not offered evidence establishing a First Amendment retaliation claim under this standard. As noted above, the undisputed evidence establishes defendant removed plaintiff's family members from the visitor list in response to allegations that plaintiff was contacting them using a contraband cellphone.

11

Plaintiff has not provided evidence suggesting the denial of visitation was retaliation for protected First Amendment activity, that defendant's actions adversely affected First Amendment activity, or a causal relationship. See Martin, 858 F.3d at 249. Defendant therefore is entitled to judgment as a matter of law on plaintiff's retaliation claim.

   5. Qualified Immunity

Defendant raises the defense of qualified immunity as to plaintiff's claims.[5] "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Accordingly, "[t]o overcome an official's claim of qualified immunity, the plaintiff must show: '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" Attkisson v. Holder, 925 F.3d 606, 623 (4th Cir. 2019) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). The right allegedly abridged is "clearly established" for qualified immunity purposes in the following circumstances:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted).

Here, the Fourth Circuit has held directly that plaintiff's alleged constitutional right to in-

---

[5] Qualified immunity does not apply to plaintiff's claims for injunctive relief. See Pearson v. Callahan, 555 U.S. 223, 242–43 (2009). However, plaintiff's requests for injunctive relief are moot where plaintiff's family's visitation rights have been reinstated. (Pl's Ex. 2 (DE 36-2) at 2; Herring Decl. (DE 29-1) ¶ 7).

12

person visitation was not clearly established in June 2019. Desper, 1 F.4th at 243–44 ("Although the Supreme Court has considered issues concerning the visitation rights of prisoners in several cases, no case from that Court or [the Fourth Circuit] clearly establishes a constitutional right to visitation grounded in the First . . . or Fourteenth Amendments."). Accordingly, defendant also is entitled to qualified immunity as to plaintiff's claims for monetary damages.

6. Official Capacity Claims

To the extent plaintiff is attempting to assert official capacity claims against defendant, the court dismisses such claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Neither States nor state officials acting in their official capacities are "persons" subject to suit under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Moreover, these claims are barred by the Eleventh Amendment, see Board of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001); Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997), and the exceptions to Eleventh Amendment immunity are not applicable here. See College Savs. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999); Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976); Ex parte Young, 209 U.S. 123, 159 (1908).

**CONCLUSION**

Based on the foregoing, defendant's motion for summary judgment (DE 26) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 14th day of September, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge

13

Case 5:20-ct-03072-FL    Document 42    Filed 09/14/22    Page 13 of 13